UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

_____

MARK AWOLESI, M.D.,

            Plaintiff,                  BENCH STATEMENT

v.

                                             6:10-CV-06125 EAW

ROBERT A. MCDONALD,
Secretary, Department of Veterans Affairs,

            Defendant.

_____

THIS STATEMENT DOES NOT CONSTITUTE A PUBLISHED DECISION AND ORDER OF THIS COURT. IT IS LIMITED TO THE FACTS OF THIS CASE AND MAY NOT BE CITED AS PRECEDENTIAL AUTHORITY OR OTHERWISE USED IN UNRELATED CASES BEFORE THIS OR ANY OTHER COURT, BUT MAY BE CALLED TO THE ATTENTION OF THIS OR ANY OTHER COURT IN A SUBSEQUENT STAGE OF THIS CASE, IN A RELATED CASE, OR IN ANY CASE FOR PURPOSES OF COLLATERAL ESTOPPEL OR RES JUDICATA.

## INTRODUCTION

Plaintiff Mark Awolesi, M.D., moves "in the interests of justice" and pursuant to 28 U.S.C. § 1404(a) to transfer venue of this action to the United States District Court for the District of Columbia. (Dkt. 115). Plaintiff's motion, which was filed on a Saturday, two days after the jury had been impaneled in this case and less than 48 hours before proof in this matter is scheduled to begin, argues that Plaintiff is unable to receive a fair trial in this District because of the racial composition of the jury pool and/or jury. (*Id.*). Plaintiff has failed to demonstrate that the transfer of this matter would be appropriate or in the interest of justice, and his motion is denied.

## DISCUSSION

### I. Legal Standard

Pursuant to 28 U.S.C. § 1404(a), "[f]or the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought or to any district or division to which all parties have consented." Plaintiff's claims are brought pursuant to Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000e *et. seq.* ("Title VII"), which contains a special venue provision. *See Minnette v. Time Warner*, 997 F.2d 1023, 1026 (2d Cir. 1993). Under the special venue provision of Title VII, "[f]or purposes of sections 1404 and 1406 of Title 28, the judicial district in which the respondent has his principal office shall in all cases be considered a district in which the action might have been brought." 42 U.S.C. § 2000e-5(f)(3). Respondent in this matter has his principal office in the District of Columbia, and thus the District of Columbia District Court is a district where this action might have been brought for purposes of the present motion.

"Having satisfied that threshold inquiry, the Court must evaluate the following factors to determine whether to grant a motion to transfer venue: (1) the convenience of the witnesses; (2) the convenience of the parties; (3) the location of relevant documents and the relative ease of access to sources of proof; (4) the locus of operative facts; (5) the availability of process to compel the attendance of unwilling witnesses; (6) the relative means of the parties; (7) the forum's familiarity with the governing law; (8) the weight accorded the plaintiff's choice of forum; and (9) trial efficiency and the interests of

justice." *Dickerson v. Novartis Corp.*, No. 1:15-CV-1980-GHW, 2016 WL 1611504, at *5 (S.D.N.Y. Apr. 21, 2016) (quotation omitted).

## II. Transfer is not Warranted

In this case, almost all of the relevant factors strongly favor venue in the Western District of New York. To the Court's knowledge, none of the witnesses in this matter are located in the District of Columbia, and many of them are located in the Western District of New York. With respect to the convenience of the parties, Plaintiff and his counsel are located in the Western District of New York, as are those employees of Defendant who are involved in this matter and the Assistant United States Attorneys who have defended this action from its outset more than five years ago. Relevant documents are likely to be found in the Western District of New York, where Plaintiff was employed and where all discovery in this matter has occurred. The locus of operative facts plainly occurred in the Western District of New York. Since most of the witnesses are located within this District, their attendance could not be compelled by the District of Columbia District Court, located out of New York State and more than 100 miles away. *See* Fed. R. Civ. P. 45(c)(1).

Plaintiff (the party now seeking transfer) chose to bring his action in the Western District of New York over five years ago, and trial efficiency will be severely compromised by any transfer of this action. This matter is trial ready. A jury has been selected. Indeed, this is the Court's third attempt at trying this action – the trial of this matter was originally scheduled to begin on August 11, 2014, but was adjourned when Plaintiff's former counsel made a motion to withdraw. (Dkt. 57). The trial was

rescheduled to go forward with Plaintiff's current counsel in January 2015, but was adjourned at the request of the parties. (*See* Dkt. 89). A transfer at this juncture will result in significant and unwarranted delay in an action that has already been pending for more than half a decade.

Plaintiff does not discuss any of the above-identified factors. Indeed, he has not cited a single federal case in support of his motion, choosing instead to rely on state court decisions interpreting New York CPLR 510(2), which "authorizes a court, in its discretion, to grant a motion for a change of venue where there is reason to believe that an impartial trial cannot be had in the proper county. . . ." *De Bolt v. Barbosa*, 280 A.D.2d 821, 822 (2001) (quotation denied). Relying on this inapposite state case law, Plaintiff argues that a transfer of venue is required in this matter because "Plaintiff cannot receive a fair trial by a jury of his peers in the City of Rochester before the jury panel as presently constituted. Indeed, the make-up of the original jury pool itself made clear that a diverse panel of jurors from which the parties can select cannot be appropriately found in this District. . . ." (Dkt. 115 at ¶ 4).

This argument is wholly without merit. Plaintiff does not contend that the jury pool did not represent a fair cross-section of the District. Rather, Plaintiff's argument, in sum and substance, is that the Western District of New York is not as diverse as, for instance, the District of Columbia, and therefore, any jury pool in this District will necessarily be less racially diverse. Plaintiff, who resides in the Western District of New York, should have been aware of the community's racial composition at the time he commenced the action. If he believed he was unable to receive a fair trial in this District,

it could and should have been addressed at that time, not more than five years later and well past the eve of trial. *See, e.g., Whitney Lane Holdings, LLC v. Sgambettera & Associates, P.C.*, No. 08-CV-2966 JS AKT, 2010 WL 4259797, at *3 (E.D.N.Y. Sept. 8, 2010) (denying motion to transfer venue in part because of unwarranted delay in bringing motion); *Brennan v. Straub*, No. 02 CIV. 7655(RWS), 2003 WL 21313841, at *2 (S.D.N.Y. June 9, 2003) (denying transfer motion because "[t]he defendants have waited too long to make this motion for such a transfer to be in the interests of justice"); *Crane v. Metro-N. Commuter R.R.*, No. 87 CIV. 2876 (MJL), 1989 WL 74954, at *2 (S.D.N.Y. June 26, 1989) (noting that "[w]hile it is true that § 1404(a) sets no express time limits on the filing of a motion to transfer, the moving party should act with reasonable promptness" and denying transfer motion made by plaintiff where "all of the circumstances set forth by plaintiff in support of transfer existed at the time [plaintiff] selected this District as the forum for his grievance"). Taken to its logical conclusion, Plaintiff's argument would mean that this Court (and any other court with less racial diversity than a major metropolitan city, such as the District of Columbia) could never hear a Title VII case brought by an African American plaintiff. Plaintiff has not identified any factors that differentiate his case from the many Title VII cases brought by African American plaintiffs that this Court has tried without issue since the enactment of that statute.

The fact is that, at Plaintiff's request,[1] race was addressed and explored with the jury pool during voir dire to ensure that a fair and impartial jury was selected that could well and faithfully try this case, without regard to any bias, including racial bias. Plaintiff, in essence, contends that white jurors are categorically unable to be fair and impartial in a Title VII case involving an African American plaintiff, and this is not only unsupported by the record in this case, but just plain wrong. *See generally United States v. Washington*, 813 F. Supp. 269, 274 (D. Vt. 1993), *aff'd*, 48 F.3d 73 (2d Cir. 1995) (denying request to transfer venue based in part on racial composition of district because "'there is no constitutional presumption of juror bias for or against members of any particular racial or ethnic groups'") (quoting *Rosales–Lopez v. United States*, 451 U.S. 182, 190 (1981)).

Moreover, a review of Plaintiff's papers makes it clear that the sole factual basis for this motion is Plaintiff's assumptions about the racial and ethnic composition of the jury pool from which the jury in this matter was chosen. Plaintiff asserts, seemingly solely on the basis of his counsel's observation of the jury pool, that "of the 48 members of the original jury pool, there were only two or three individuals who were Hispanic and/or African American." (Dkt. 115 at ¶ 5). This implicit assumption that the races and/or ethnicities of jurors can be gleaned from mere observation is a precarious

---

[1] The Court's pretrial order allowed both parties to submit proposed voir dire questions. (Dkt. 99 at 3 ("The parties may submit a list of proposed questions they wish the Court to ask the panel. Failure to do so constitutes a waiver of any requests by that party.")). Plaintiff's counsel did not submit any proposed voir dire questions, but during voir dire, asked that the Court explore the issue of race, and the Court complied with Plaintiff's counsel's request.

proposition. Plaintiff has not provided any objective facts about the racial and/or ethnic make-up of the jury pool in this matter.

Although it is not directly on point, the well-established body of case law regarding what constitutes "a jury selected from a fair cross section of the community" as guaranteed by the Sixth Amendment in a criminal matter is instructive. *See United States v. Rioux*, 97 F.3d 648, 654 (2d Cir. 1996). In order to demonstrate that there has been a violation of the fair cross-section requirement, a criminal defendant must show "(1) that the group alleged to be excluded is a 'distinctive' group in the community; (2) that the representation of this group in venires from which juries are selected is not fair and reasonable in relation to the number of such persons in the community; and (3) that this underrepresentation is due to systematic exclusion of the group in the jury-selection process." *Id.* While "Blacks and Hispanics are unquestionably 'distinctive' groups for the purposes of a fair-cross-section analysis," *id.*, Plaintiff has not provided the Court with any evidence that these groups were underrepresented in the jury pool in this matter or that they have been systematically excluded from the jury-selection process. Again, Plaintiff's motion papers actually indicate otherwise, suggesting that the case must be moved to another district in order to accomplish the diversity goals that Plaintiff seeks. In other words, according to Plaintiff, the jury pool in this case lacked racial diversity because this community lacks racial diversity – not because the jury pool failed to represent a cross-section of the community.[2] Under these circumstances, the Court

---

[2] Indeed, while again racial background cannot be determined by mere observations, the Court notes that the racial diversity of the jury pool in this case appeared consistent

cannot determine that the jury pool in this matter was so lacking in diversity as to offend the interests of justice. It is of course well-established that even a defendant in a criminal matter has no right to a jury "composed in whole or in part of persons of his own race." *Batson v. Kentucky*, 476 U.S. 79, 85 (1986) (quotation omitted).

Plaintiff has not cited, and the Court has not found in its own research, a single case in which a motion to transfer venue was granted based solely on the basis of the racial make-up of the proposed transferee venue. Instead, the case law related to this subject cuts against Plaintiff's argument. *See, e.g., Washington*, 813 F. Supp. at 274 (denying request to transfer venue based in part on racial composition of district); *Bell v. Rock-Tenn*, No. 2:14CV1167-MHT, 2015 WL 1120271, at *4 (M.D. Ala. Mar. 12, 2015) ("Ordinarily, and particularly where all other factors of efficiency, justice, and convenience weigh heavily in favor of litigating in a forum allegedly subject to concerns of a biased jury pool, such concerns can be quite adequately addressed by the use of voir dire in the jury selection process."); *United States v. Vela-Salinas*, No. 3:11-CR-00083-19, 2014 WL 3555972, at *6 (M.D. Tenn. July 18, 2014) ("a statistical difference in race between two districts' jury pool[s] does not satisfy the burden to justify a transfer") (citing *United States v. Logan*, 542 F. App'x 484, 493 (6th Cir. 2013)). In sum, Plaintiff has failed to establish that trying this matter in this District is in any way inimical to the interest of justice or that he would be prejudiced in any manner by going forward with the trial before the jury that has been selected.

---

with other jury pools of trials over which the Court has presided. In other words, there did not appear to be anything unique about the jury pool in this case.

## CONCLUSION

For all the foregoing reasons, the Court finds that Plaintiff has failed to establish that a transfer of venue is appropriate. Plaintiff's motion to transfer venue (Dkt. 115) is denied.